UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BIANCA AMPARO,

    Plaintiff,

v.                                                 Case No. 6:18-cv-1833-Orl-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues her case should be remanded to the Commissioner under sentence four of 42 U.S.C. §405(g), because the Administrative Law Judge (ALJ) erred in considering the opinions of her treating psychiatrist and in formulating her residual functional capacity (RFC). After considering Plaintiff's argument, Defendant's response, and the administrative record (docs. 14, 20), I find substantial evidence supports the ALJ's decision that Plaintiff is not disabled. I affirm.

    *A. Background*

Plaintiff Bianca Amparo – 35 years old on her alleged onset date of February 25, 2014 – has a high school education and past work experience as a cafeteria worker at a public school, a cook's helper, and a dietary aide. Plaintiff alleges disability due to depression, anxiety, and panic attacks. She testified she is unable to work because of "the depression and the panic attacks and all of that, I started developing more and more fear because of the things that I would hear

---

[1] The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

regarding holdups, people getting shot and all that kind of stuff." (R. 185) And "when these feelings started, I would see like, like white and I started feeling badly. And I was starting to see things that to me were real, although people told me that they were not real." (*Id.*)

Plaintiff testified she is legally married, although she and her husband do not live together. (R. 181) They have two kids, a girl who was 12 at the time of the administrative hearing and a boy who was 7. Her son has spina bifida; Plaintiff is his primary caregiver. Her husband helps some when the kids are home from school in the summer, and her mom helps to clean the house and take the kids to the park. But Plaintiff does the cooking, shopping, and the driving for her kids. Her son's disability requires her constant attention:

> I have to help him with this homework, bathe him, change his Pamper because he's seven years old, but he can't – he has no – he's incontinent. I have to give him his medication, medicine every day because he suffers from asthma. And to add insult to injury, the teacher is telling me that he has now learning problems, and that, that gave me even more depression because if it's not one thing, it's another.

(R. 188) Plaintiff primarily speaks Spanish but says, "I get by," when asked how she handles an English-speaking workplace. (R. 183) She testified with the aid of an interpreter at the hearing.

After the hearing, the ALJ found Plaintiff has the severe impairments of major depressive disorder, generalized anxiety disorder, hearing loss, and degenerative joint disease of the right arm. (R. 41) The ALJ identified Plaintiff's non-severe impairments as dyspepsia, abdominal pain, other GI issues, and lupus. (*Id.*) Although Plaintiff's medical records mention fibromyalgia, the ALJ found it is not a medically determinable impairment. Aided by the testimony of a VE, the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work with the following limitations:

> She can only occasionally climb ladders, ropes and scaffolds. She can frequently (as opposed to constantly) push and pull with the right upper extremity. She can perform simple, routine and repetitive tasks with no noise above a medium office level. She can frequently rely on verbal communication in the workplace. She can

2

tolerate occasional changes in a routine work setting. She must avoid unprotected heights and dangerous machinery. She primarily speaks Spanish.

(R. 43) The ALJ found that, with this RFC, Plaintiff is able to perform her past relevant work as a cafeteria helper. (R. 47) The Appeals Council denied review. Plaintiff, having exhausted her administrative remedies, filed this action.

*B. Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her

3

prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

 *C. Discussion*

  *1. Treating psychiatrist's opinions*

Plaintiff argues that the ALJ erred by not discussing the records of her treating psychiatrist Bhaskar Raju, M.D., because they document more extreme limitations than the ALJ's RFC reflects. The Commissioner concedes that the ALJ did not reference Dr. Raju in his opinion by name but points out: the psychiatrist's statements are not all "medical opinions" under the statutory and regulatory scheme; substantial evidence supports the ALJ's consideration of Plaintiff's mental impairments; and Dr. Raju's GAF findings are of limited value. I agree with the Commissioner.

Dr. Raju and nurse practitioners at his office (Orlando Psychiatric Associates) treated Plaintiff five times between June 2016, and March 2017. Plaintiff reported anxiety attacks, paranoia with visual hallucinations, and depression to Dr. Raju in June 2016. (R. 1267) Dr. Raju noted Plaintiff was oriented to place, person, and time; did not have suicidal thoughts; and had "fair" insight and judgment. (R. 1268) Dr. Raju asked Plaintiff routine questions about her allergies, smoking status, and medical history. Under the heading Education/Employment History, Dr. Raju wrote in his notes, "[c]urrently Bianca is disabled." (R. 1267) After an examination, Dr. Raju prescribed Zoloft, Xanax, and Zyprexa, and characterized Plaintiff's assessment as "fair," and assigned her a GAF of 50. (R. 1269)

Although Dr. Raju instructed her to return in three weeks, Plaintiff's next appointment of record was in November 2016. (R. 1263) At that time, Plaintiff reported "anxiety attacks even with treatment." (R. 1263) Dr. Raju added Seroquel to Plaintiff's list of medications and referred her to therapy. (R. 1264-65) Plaintiff returned to Dr. Raju's office in December 2016. Nurse practitioner Davleca Singh reported she was "very tearful and anxious. Her speech was rapid and her affect flat. Reported she had not slept for over 48 hr." (R. 1260) Her depression symptoms were not improving, her energy level was low, and she felt her medications were ineffective. Nonetheless, Ms. Singh assessed her as "stable," with fair insight and judgment and clear thought processes. (R. 1261) To determine the best combination of medications for Plaintiff, Ms. Singh consulted Dr. Raju, and they decided to discontinue Zoloft and Seroquel, continue Xanax, and add Lexapro and Zyrexa. (R. 1262)

At Plaintiff's next appointment in February 2017, she complained that Zyprexa upset her stomach and caused acid reflux, but her "mood is better, less irritable and less fatigue." (R. 1257) In March 2017, Plaintiff reported that her "medication has been helping, although there is

5

occasionally break through crying and feeling sad due to recent diagnosis [of Lupus]."[2] (R. 1254) Again, Dr. Raju stated Plaintiff's "mood is better, less irritable and less fatigue. Ms. Amparo reports her anxiety is better with medication. No side effects are reported or in evidence."[3] (*Id.*)

Plaintiff is right: the ALJ did not explicitly mention either Dr. Raju or Orlando Psychiatric Associates. But the ALJ does refer to these records. Dr. Raja's treatment notes are Exhibit 28F in the administrative record. (R. 1254-69) After summarizing Plaintiff's earlier treatment with Orlando Behavioral Healthcare's Drs. Ruiz and Carter-Torres, the ALJ wrote, "[t]he notes state that the claimant continued to report increasing panic attacks and depression. The mental status exams continued to return findings mostly within normal limits but occasionally noting an anxious mood. The more recent 2017 records continue to report improvement in anxiety, mood, fatigue and irritability with medication (Exhibit 28F)." (R. 45) And, later in his opinion, the ALJ cites to Drs. Ruiz, Carter-Torres, and Raja's treatment notes collectively, but due to an apparent scrivener's error attributes the treatment to only Drs. Ruiz and Carter-Torres: "As for the opinion evidence, the undersigned considered the opinions and diagnoses of Drs. Ruiz and Carter-Torres (Exhibits 4F, 5F, 12F, 13F and 28F). However, the records contain mostly vague or indefinite assessments of the claimant's limitations and do not express the limitations in vocational terms." (R. 45)

---

[2] There is little mention of Plaintiff's lupus diagnosis in her records. The ALJ noted the diagnosis but found it a non-severe impairment. (R. 41) Plaintiff does not challenge this.

[3] The Commissioner suggests that Dr. Raju's records are not "medical opinions," because they do not express judgment as to the nature and severity of Plaintiff's impairments. The Commissioner does not develop this argument. Under the applicable regulations, medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Considering this, Dr. Raju's notes contain medical opinions. This argument is inapposite, however, as I find the ALJ properly considered them.

Plaintiff does not challenge the ALJ's consideration of Drs. Ruiz and Carter-Torres's treatment notes. The issue instead is whether substantial evidence supports the ALJ's consideration of Dr. Raju's notes. The method for weighing medical opinions under the Social Security Act is set forth in the regulations at 20 C.F.R. § 404.1527(c). Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 404.1527(d)(2). *Winschel* instructs that with good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

After reviewing Plaintiff's medical records, I agree with the Commissioner that the ALJ did not err in considering Dr. Raju's opinions. Plaintiff carves out Dr. Raju's one-time statement

that "[c]urrently Bianca is disabled," as definitive proof the psychiatrist considered Plaintiff's mental impairments disabling. (R. 1267; doc. 20 at 29) This goes too far. The statement is under the heading Education/Employment History and appears to be Plaintiff's response to a question about her current work status. (R. 1267-68) It is not the psychiatrist's finding that Plaintiff is unable to work, as Plaintiff suggests (doc. 20 at 20).

Next, Plaintiff leans heavily on her argument that the ALJ did not identify Dr. Raju by name in his opinion, but this is a red herring. As mentioned above, the ALJ referenced and cited to Dr. Raju's opinions. In other words, it is clear he considered them. Instructive is *Hunter v. Commissioner of Social Security*, 609 F. App'x 555 (11th Cir. 2017). There, the Eleventh Circuit upheld the district court's affirmance of the administrative denial of the plaintiff's disability application, even though the ALJ did not identify two of the plaintiff's treating physicians by name and failed to state the weight assigned to their opinions. *Id*. at 558. Instead, the ALJ summarized their treatment notes, noted inconsistencies with the rest of the record, and pointed out that these unnamed physicians did not offer medical opinions about how the plaintiff's condition would impact his ability to work. *Id*. This case fits *Hunter*'s mold.

Finally, the ALJ did not err in omitting mention of Dr. Raju's GAF finding of 50 in June 2016. The GAF is a standard measurement of an individual's overall functioning "with respect only to psychological, social, and occupational functioning using a 1 to 100-point scale. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-33 (4th ed. 2000) (DSM-IV). According to the DSM-IV, a GAF rating in the range of 41-50 indicates that the person has either serious symptoms (such a suicidal ideation or severe obsessional rituals) or a serious impairment in social, occupational, or school functioning (such as no friends or an inability to keep a job). *Id*. But, as the ALJ correctly noted here (R. 46), a GAF score merely reflects an examiner's

opinion regarding a patient's symptoms at the time of the examination and does not necessarily provide insight into a claimant's ability to function in a competitive environment.

In fact, the American Psychiatric Association abandoned the GAF scale in its most recent edition of the DSM (the DSM-V) "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *DSM-V* at 16 (5th ed. 2013). After the DSM-V was published, the Social Security Administration issued a directive to its ALJs instructing them to consider GAF scores as medical opinion evidence but emphasizing that a claimant's GAF scores should not be considered in isolation. *See Castro v. Acting Comm'r of Soc. Sec. Admin.*, __ F. App'x ___, 2019 WL 4072014, at *2 fn. 3 (11th Cir. Aug. 29, 2019). The directive states:

> The GAF is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be sued to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a persons' functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

*Id*., quoting Soc. Sec. Admin., Administrative Message 13066 (July 22, 2013).

In any event, even before the American Psychiatric Association abandoned the GAF scale, the Commissioner declined to endorse GAF scores for use in disability programs, because the scores "have no direct correlation to the severity requirements of the mental disorders listings." *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005). Here, in his decision, the ALJ noted Plaintiff's GAF scores:

> The record includes several GAF scores from multiple sources. The undersigned considered these scores, some of which are discussed herein, in assessing the severity of the claimant's impairments and symptoms. However, although a GAF score can offer significant evidence regarding the severity of the claimant's mental impairments, it is a mere snapshot of the claimant's ability to function at the particular time of the assessment. Additionally, GAF scores are not standardized

and are not designed to predict outcome. . . .Therefore, while they provide significant value in assessing the severity of symptoms and impairments, the undersigned accords them limited weight in determining the claimant's function-by-function residual functional capacity.

(R. 46) Given the ambiguous correlation of GAF scores to a claimant's functional limitations, I find no reversible error in the ALJ's decision to give them little weight.

2. *RFC*

Plaintiff's second argument is that her RFC is not supported by substantial evidence because the ALJ did not include functional limitations regarding her gastrointestinal impairments. The Commissioner retorts that substantial record evidence supports the ALJ's finding that medication generally controlled Plaintiff's GI symptoms.

A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which these impairments are consistent with medical evidence. 20 C.F.R. § 416.1545(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c).

The ALJ found that Plaintiff maintains the RFC to perform light work. In considering Plaintiff's complaints of GI issues at step two, the ALJ concluded they were not severe impairments and stated:

> Records from Dr. Aniq document some temporary complaints of dyspepsia evidence by abdominal bloating. She has also visited the ER for abdominal bloating and she has a history of small bowel obstruction in December 2013. The

> claimant began treating with a GI specialist. The records indicate that within a year the symptoms were adequately controlled with medications. The notes state that the symptoms are intermittent and bowel movements are regular with Miralax. The physical exam findings from the GI doctor were unremarkable noting a claimant appearing in no acute distress, cooperative and with an appropriate mood and affect. The GI issues have largely been temporary and treated with medications. The claimant was recently diagnosed with lupus. However, the record does not reflect significant limitations associated with the condition. Therefore, the undersigned finds these impairments to be non-severe for the purposes of this decision.

(R. 41)

Substantial evidence supports the ALJ's decision to omit GI limitations from Plaintiff's RFC. Plaintiff treated with gastroenterologist Aniq Shaika, M.D. from 2014, through 2017 (the ALJ mistakenly refers to Dr. Shaika as Dr. Aniq, *see* R. 41). After complaining to Dr. Shaika in January 2014 (the month before Plaintiff's alleged onset date) of persistent abdominal pain (R. 562), Plaintiff underwent a colonoscopy in February 2014, that revealed internal hemorrhoids and mild melanosis coli (a biopsy showed no active colitis or dysplasia). (R. 549, 567) Plaintiff complained mainly of dyspepsia (indigestion) with abdominal bloating in August 2014. In November 2014, she was hospitalized for a "bowel obstruction which was treated conservatively and dyspepsia." (R. 540, 574) Although a CT scan "demonstrates high grade small bowel obstruction. . . the patient's clinical exam is benign. Her abdominal pain has greatly improved since admission. She is also having bowel movements and is resting comfortably in bed. She requests that we continue with nonoperative management at this time." (R. 580)

By December 2014, her symptoms of dyspepsia were "fairly controlled" though Plaintiff still experienced persistent abdominal bloating. (R. 543) In April 2015, Dr. Shaika noted Plaintiff's complaints of constipation and dyspepsia but stated she maintained "good symptomatic control unless she in non-compliant with diet." (R. 790) Although Plaintiff complained of episodic abdominal bloating, her bowel movements were regular with Miralax, her appetite was good, and

she denied weight loss. (R. 786, 790, 1004, 1008, 1012, 1016, 1020, 1024, 1028) Dr. Shaika's abdominal examinations of Plaintiff during this period were normal (he wrote: "Normal appearance, Normal bowel sounds, No tenderness, No hepatomegaly"). (R. 788, 792, 1006, 1010, 1014, 1018, 1022, 1026, 1030)

Then, in July 2016, Plaintiff was admitted to Florida Hospital for three days for another small bowel obstruction. Doctors discovered a cancerous tumor in her appendix and performed an appendectomy and right colectomy. (R. 1105-06) Follow up appointments in August and September 2016 document "adequate symptomatic control," regular bowel movements, and a fair appetite. (R. 1115, 1118) Plaintiff also denied nausea, vomiting, and weight loss. (*Id.*) On this record, substantial evidence supports the ALJ's findings that Plaintiff's GI symptoms were controlled with medications and diet, and Plaintiff maintains the RFC to perform light work.

At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering this, there is substantial evidentiary support for the ALJ's decision that Plaintiff could perform light duty work.

*Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The Commissioner's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for the Defendant and close the case.

DONE and ORDERED in Tampa, Florida on December 2, 2019.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE